IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael Barcohana,<br><br>       Plaintiff,<br><br>v.<br><br>ZENARAA,<br><br>       Defendant. | Case No. 1:25-cv-<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Michael Barcohana, ("Plaintiff"), through its undersigned counsel, files this Complaint against ZENARAA (http://zenaraa.com), ("Defendant") and states the following allegations:

## INTRODUCTION

Plaintiff brings this action against Defendant, and e-commerce store, who unlawfully exploits Plaintiff's reputation and goodwill by manufacturing, marketing, offering for sale, and selling unauthorized and unlicensed products bearing infringing and counterfeit imitations of Plaintiff's federally registered trademark (the "Counterfeit Products").

Defendant establishes its e-commerce store under one or more Seller Aliases through which Defendant advertises, offers for sale, and sells Counterfeit Products to unsuspecting consumers. Defendant further exploits the anonymity and expansive reach of the Internet, to unlawfully infringe on Plaintiff's intellectual property rights.

Counterfeiters attempt to evade responsibility by operating under multiple Seller Aliases to hide their identities, locations, and the full extent of their counterfeiting scheme. Plaintiff is forced to bring this action to stop the Defendant's counterfeiting of its registered trademarks and

1

to protect consumers from purchasing Counterfeit Products online. As a result of Defendant's actions, Plaintiff has suffered and continues to suffer irreparable harm through consumer confusion and dilution of its valuable trademarks, prompting a request for injunctive and monetary relief.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 USCS § 1338, and 28 USCS § 1331, as this action arises under the trademark laws of the United States.

2. This Court has personal jurisdiction over Defendant ZENARAA because Defendant directly targets business activities toward consumers in the United States, including in the State of Illinois, through its interactive e-commerce store zenaraa.com.

3. Venue is proper in this Court pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to these claims occurred in this judicial district, including the offering for sale and sale of counterfeit products to consumers in this district.

## THE PLAINTIFF

4. Plaintiff is the exclusive registered owner of the standard character mark, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and is therefore the appropriate Plaintiff to bring this case.

5. The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6. The ▇▇▇▇▇ has been in use in U.S. commerce for Plaintiff's Goods since at least as early as ▇▇▇▇▇

7. The ▇▇▇▇▇, in connection with Plaintiff's Goods have gained a strong following among health-conscious consumers by combining comfort, effective design, and a wellness-oriented aesthetic.

8. The ▇▇▇▇▇ is widely promoted across wellness and beauty social media channels.

9. The ▇▇▇▇▇ is inherently distinctive, and consumers associate the ▇▇▇▇▇ with the exclusive source of Plaintiff's Goods.

10. The ▇▇▇▇▇ is valid, subsisting, and in full force and effect. A copy of the United States registration certificate for Plaintiff's ▇▇▇▇▇ is attached hereto as **Exhibit 1.**

11. Plaintiff's registration constitutes prima facie evidence of the validity of the marks and of Plaintiff's exclusive right to use the Trademarks in commerce pursuant to 15 U.S.C. § 1057(b).

12. The ▇▇▇▇▇ is prominently displayed on Plaintiff's Goods, as well as in advertising, marketing, and promotional materials. Plaintiff has invested significant time, money, and resources to the creation, promotion, and protection of the ▇▇▇▇▇. Through these sustained efforts, Plaintiff has developed extensive brand awareness, consumer recognition and goodwill associated with the ▇▇▇▇▇. As a result, Plaintiff's Trademarks have become highly distinctive in the marketplace and symbolize the quality, reputation, and trust that consumers have come to expect from Plaintiff's Goods.

13. The ▮▮▮▮▮ has become a valuable asset of Plaintiff's business, embodying the goodwill Plaintiff has established and distinguishing Plaintiff's products from those of competitors.

14. Plaintiff's Trademark has been used in US commerce continuously since at least as early as ▮▮▮▮▮ and has never been abandoned.

15. Genuine ▮▮▮▮▮ Products are widely promoted and sold on Plaintiff's official website, ▮▮▮▮▮, TikTok Marketplace, Amazon and are expanding to other sales and social media platforms, and likely will soon appear on retail shelves.

16. Sales of Genuine ▮▮▮▮▮ Products through multiple channels are substantial and continue to grow, reflecting the strength of Plaintiff's brand and consumer trust.

17. Plaintiff's trademarks and products have also attracted unsolicited attention across social media, wellness blogs, and online communities focused on sleep optimization and breathwork. The growing presence of the ▮▮▮▮▮ brand in the digital wellness industry has further increased the brand's recognition and positive reputation.

18. The ▮▮▮▮▮ has been consistently promoted through social media campaigns, digital advertisements, email marketing, influencer partnerships, and branded packaging. Consumers widely recognize Plaintiff's Trademark as an indicator of origin, quality, and trustworthiness.

19. Plaintiff has invested substantial time, money, and resources in developing, promoting, and protecting the ▮▮▮▮▮. Plaintiff's exclusive sales channels and controlled distribution strategy serve legitimate business purposes, including safeguarding its intellectual property, maintaining consistent quality, minimizing consumer confusion, and reducing product liability risk.

20. The ▇▇▇▇▇▇ has gained widespread recognition and significant brand value. The public, industry participants, and consumers associate ▇▇▇▇-branded products with Plaintiff and identify the Trademarks as symbols of high-quality, effective, and safe sleep support solutions. The significant goodwill and reputation associated with Plaintiff's Trademarks make them some of Plaintiff's most valuable assets.

## THE DEFENDANT

21. Defendant is/are unknown individual(s) and business entities who own and/or operate the e-commerce store zenaraa.com and/or other seller aliases not yet known to Plaintiff. Defendant's residency, citizenship, and true address are unknown.

22. Defendant is believed to be a foreign entity or individual in China as their products are prepared and shipped from China and bear a "Made in China" designation on the packaging. Defendant's alleged United States affiliation and addresses is unverified.

23. Defendant's website zenaraa.com does not maintain a registered agent for service of process and is not registered as a business entity with either the Michigan Secretary of State or the New Jersey Secretary of State.

24. Upon information and belief, Defendant lists two addresses listed herein, including 663 Apache Dr, Fremont MI 49412; and/or 111 Town Square Place, Suite 1205, Jersey City, NJ 07310.

## DEFENDANT'S UNLAWFUL CONDUCT

25. Plaintiff's overall success using the ▇▇▇▇▇▇ has resulted in significant counterfeiting of the Brand Trademark.

26. Defendant concurrently employs and benefits from substantially similar advertising and marketing strategies.

27. E-commerce stores like Defendant's, appear sophisticated and accepts payment in United States currency and/or funds from United States bank accounts via credit cards, Alipay, Shop Pay, Amazon Pay, Google Pay and/or PayPal.

28. Online Marketplaces, such as Defendant's store zenaraa.com, often include advertisements, content, and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.

29. Defendant's associated Facebook account, which promotes the zenaraa.com online store, advertises and displays images of products bearing Plaintiff's ▮▮▮▮▮▮▮▮. The account's use of Plaintiff's brand name and product imagery in its social media advertisements further misleads consumers into believing that Defendant's goods are affiliated with, sponsored by, or authorized by Plaintiff.

30. Defendant ships products bearing Plaintiff's ▮▮▮▮▮▮▮▮. As a result, consumers are misled into thinking the products come from or are endorsed by Plaintiff. Plaintiff has not licensed or authorized Defendant to use the ▮▮▮▮▮▮▮▮, and Defendant is not an authorized retailer or reseller of genuine ▮▮▮▮▮▮ products.

31. Defendant also deceives unknowing consumers by using Plaintiff's Trademark, within their advertising content, text, pictures, Search Engine Optimization ("SEO") terms, and/or meta tags for their Online Marketplace to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's ▮▮▮▮▮▮ products.

32. Counterfeiters like Defendant commonly engage in fraudulent conduct when registering the identities, such as the Seller Aliases, by providing false, misleading, and/or incomplete information to prevent discovery of their true identities and the scope of their e-commerce operations.

33. Defendant's unauthorized use of Plaintiff's Mark to sell counterfeit products in Illinois causes irreparable harm to Plaintiff by damaging its goodwill, reputation, brand, and trademark value. Attached as **Exhibit 2** are true and correct copies of examples of the uses of Plaintiff's Mark by Defendant.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 33 as if fully set forth herein.

35. Plaintiff is the exclusive owner of the federally registered ▮▮▮▮▮▮ (Registration No. 7824763), which is valid, subsisting, and in full force and effect.

36. Defendant uses the ▮▮▮▮▮▮ in commerce without Plaintiff's consent.

37. Defendant has, without Plaintiff's authorization, manufactured, marketed, offered for sale, and sold products bearing counterfeit and infringing imitations of Plaintiff's ▮▮▮▮▮▮ ▮.

38. Defendant used the ▮▮▮▮▮▮ in connection with the sale, offering for sale, distribution, or advertising of goods.

39. Defendant has used the ▮▮▮▮▮▮ or substantially indistinguishable imitations thereof in connection with the advertising, promotion, offering for sale, and sale of counterfeit products through its e-commerce store zenaraa.com.

40. The mark used by Defendant is a counterfeit mark.

41. Defendant's products bear marks that are identical to or substantially indistinguishable from Plaintiff's registered ▮▮▮▮▮▮, constituting counterfeit marks under the Lanham Act.

42. Defendant has sold counterfeit products to consumers, where products ordered on zenaraa.com were delivered in ▮▮▮▮▮ packaging and contained the ▮▮▮▮▮ on the actual product itself.

43. Defendant has advertised its products on social media, such as Facebook and Instagram, using ▮▮▮▮▮ branded products in its videos.

44. Defendant's use of the ▮▮▮▮▮ is likely to cause confusion, mistake, or deception.

45. Defendant's unauthorized use of the ▮▮▮▮▮ is likely to cause confusion, mistake, and deception among consumers as to the origin, sponsorship, or approval of Defendant's products.

46. Consumers are likely to believe that Defendant's products originate from, are sponsored by, or are affiliated with Plaintiff when they are not.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

47. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the Paragraphs 1 through 46, above.

48. Defendant's promotion, marketing, offering for sale, and sale of Counterfeit Products using the ▮▮▮▮▮ without authorization, have and are creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, approval by, or association with Plaintiff, of the Defendant and its Counterfeit products.

49. By using Plaintiff's Trademark in connection with the sale of Counterfeit Products, Defendant creates a false designation of origin.

50. By using Plaintiff's Trademarks, Defendant create a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

51. Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

52. Defendant has sold counterfeit products to consumers in a manner that has caused actual consumer confusion. Specifically, there have been instances where a consumer purchased a product from Defendant's website, zenaraa.com, believing they were buying Defendant's own products, but instead received ▮▮▮▮ branded products. As a result, consumers were confused into believing that Defendant's products were affiliated with, sponsored by, or originating from Plaintiff's ▮▮▮▮ brand.

53. As a direct and proximate result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, irreparable harm, including loss of goodwill, injury to reputation, and damage to the distinctiveness of its ▮▮▮▮.

54. Monetary damages cannot adequately compensate such injuries. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116, as well as damages, disgorgement of Defendant's profits, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

55. If Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its ▮▮▮▮.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. That Defendant, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, though, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using Plaintiff's Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product, including within the content, text, SEO terms, and/or meta tags for their Online Marketplaces, that is not a genuine ▉▉▉▉▉ product or is not authorized by Plaintiff to be sold in connection with Plaintiff's registered Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Brand product or any other product produced by Plaintiff by using the ▉▉▉▉▉ to sell and offer for sale such products that are not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff;

    c. committing any acts calculated to cause consumers to believe that Defendant's inferior products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff or its Brand;

    d. further infringing Plaintiff's Trademarks and damaging Plaintiff's reputation and goodwill;

    e. otherwise competing unfairly with Plaintiff through the unauthorized use of Plaintiff's Trademarks in any manner;

    f. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory sold or offered for sale through the unauthorized use of the Trademark;

   g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant's store(s), or any other domain name or online marketplace account that is being used to sell or is the means by which Defendant could continue to sell counterfeit Brand products through the unauthorized use of the ███████████ ; and

   h. operating and/or hosting websites at the Defendant's Online Marketplaces and any other domain names registered or operated by Defendant that is involved with the distribution, marketing, advertising, offering for sale, or sale of any product through the unauthorized use of Plaintiff's ███████████ .

  2. Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including Facebook, Instagram, TikTok, Amazon, Shopify, Alibaba, DHGate, eBay, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of counterfeit and infringing goods using Plaintiff's ███████████ ;

  3. That Defendant accounts for and pays to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the ███████████ be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

  4. In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the ███████████ Trademark;

  5. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

  6. Award any and all other relief that this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: November 7, 2025

Respectfully Submitted,

By: */s/ Joseph W. Droter*
Joseph W. Droter (IL Bar No. 6329630)
Katherine M. Kuhn (IL Bar No. 6331405)
Nazly A. Bayramoglu (NM Bar No. 151569)
Nihat Deniz Bayramoglu (NV Bar No. 14030)
**BAYRAMOGLU LAW OFFICES LLC**
233 S. Wacker Drive, 44th Floor, #57
Chicago, IL 60606
Tel: (702) 462-5973   Fax: (702) 553-3404
Joseph@bayramoglu-legal.com
katherine@bayramoglu-legal.com
nazly@bayramoglu-legal.com
deniz@bayramoglu-legal.com
*Attorneys for Plaintiff*